## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| **CHRISTIAN PEARSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:16-05271** |
| | ) | |
| **J. STOCK,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 26), filed on December 2, 2016. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 29.) Plaintiff, however, has failed to file a Response in Opposition. Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted.

### FACTUAL AND PROCEDURAL HISTORY

On June 10, 2016, Plaintiff, acting *pro se* and an inmate at FCI McDowell filed his Complaint in this matter seeking relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 3.) In his Complaint, Plaintiff names the

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a

following as defendants: (1) J. Stock, Inmate Counselor at FCI McDowell; (2) M Rife, Unit Manager at FCI McDowell; (3) Lieutenant Mouse, Correctional Lieutenant of Segregated Housing Unit at FCI McDowell; and (4) Captain Martinez, Captain of Security at FCI McDowell. (Id., p. 2.) Plaintiff first alleges that Defendants acted with negligence and deliberate indifference in providing an appropriate cell assignment following his ankle surgery on March 10, 2014. (Id., p. 3.) Plaintiff explains that his ankle was placed in a hard cast and he was unable to bear weight on his leg following surgery. (Id.) Plaintiff complains that he was assigned to a "smaller three man cell [and] these cells are hard pressed for space making movement dangerous for someone in the medical condition [Plaintiff] was in at that time." (Id.) Plaintiff alleges that "[p]roper protocol called for [Plaintiff] to be assigned, at least temporarily to one of the medical accessible cells on his unit, which were suitable to his condition." (Id.) Plaintiff, however, claims that "the Unit Team chose to follow their own in-house policy that those released from SHU are systematically placed in three (3) man cells." (Id.) Plaintiff asserts that he made a "spoken request to Unit Counselor J. Stock explaining that he was having difficulty in negotiating toilet duties . . . and that trying to navigate these and other procedures while on pain medication was hazardous." (Id.) Plaintiff alleges that Mr. Stock "adamantly refused to conditionally consider the request" and threatened to throw Plaintiff in SHU if Plaintiff "couldn't work it out." (Id., p. 14.) Plaintiff contends that the following day, he notified Unit Manager M. Rife and was informed that the issue would be addressed with Counselor Stock. (Id.) After waiting approximately two weeks without action, Plaintiff notified Warden Masters of the issue and was advised that the issue would be addressed.

---

less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

(Id.) Plaintiff, however, indicates that no medical cell was provided. (Id.)

Plaintiff states that on March 31, 2014, he slipped and fell after using the toilet. (Id., p. 5.) Plaintiff alleges that his "casted leg slipped out from under him" and he "completely lost his balance striking his head on the stainless steel sink that was directly next to the toilet." (Id.) Plaintiff states that he "struck the sink with so much force that he lost consciousness" and "upon coming to, [he] was bleeding profusely from above his right eye and nose." (Id.) Plaintiff complains that when medical staff arrived, he was "made to walk through the Unit out to an awaiting medical cart" instead of being placed on a gurney. (Id.) Plaintiff alleges that when "[t]he primary physician found that [he] had sustained a laceration on the eyeball itself, which required outside medical treatment, [Plaintiff] was taken by ambulance service to the Beckley ARH Hospital." (Id., p. 6.) Plaintiff explained that while at Beckley ARH, the doctor ordered a CT scan which revealed a "fracture of the orbital floor (blow-out), fractured nasal bones, concussion injury of brain, chemosis of conjuntivea, sinus hematoma, and contusion of the face." (Id.) Plaintiff states that he was then transferred to the Charleston Area Medical Center "because Beckley ARH Hospital was not suitable to perform the surgery required." (Id.) Plaintiff alleges that his "condition was 'critical' upon being transferred." (Id.) Plaintiff claims that "upon being seen by physicians in Charleston, it was explained by the surgeon that because of the orbital socket break, everything on the right side of [his] face shifted requiring emergency surgery." (Id.) Plaintiff states that "[i]t was also discovered that [he] had sustained a slight fracture/dislocation along his upper jaw." (Id.) Plaintiff acknowledges that he "received extensive corrective surgery." (Id.)

Next, Plaintiff complains that he received inappropriate post-operative care and cell placement following his release from the hospital. (Id., p. 7.) First, Plaintiff contends that medical staff at FCI McDowell failed to follow post-operative instructions requiring Plaintiff to be returned

to "Dr. Henderson's clinic in one week for removal of nasal packing and dorsal splint." (Id.) Plaintiff alleges that even though he made numerous complaints to medical staff that the "packing was causing pain and permeating a foul odor," he was not returned to Dr. Henderson for a follow-up appointment "for weeks." (Id.) Plaintiff contends that Dr. Henderson stated that "the delayed follow-up in having the packing and drainage tube removed led to [Plaintiff] suffering from acute complications of epileptic shock." (Id.) Second, Plaintiff alleges that upon his discharged from Charleston Medical Center, he was placed in segregation instead of general population. (Id.) Plaintiff states that the following morning, Lt. Mouse and "several corrections officers came to the cell occupied by [Plaintiff] and ordered him to cuff up." (Id.) Plaintiff states that he was then moved to a "hard cell," which is a "cell utilized for inmates who are disruptive or violent, and to [Plaintiff's] understanding they are utilized as a means of disciplinary enforcement which [Plaintiff] should not have been subjected." (Id.) Plaintiff explains that his cell consisted of a large concrete slab for a bed with no mattress or other form of bedding. (Id.) Plaintiff alleges that he was only a few days post-surgery and he was "in no condition to lay on a concrete slab." (Id., pp. 7 - 8.) Plaintiff further asserts that Lt. Mouse threatened Plaintiff and told Plaintiff that "he better be f**king dying before thinking about hitting the duress button." (Id., p. 8.) Plaintiff states that "in fear of his personal safety and welfare, he threatened harm to himself in order for psychological services to be summoned." (Id.) Plaintiff states that he informed Dr. Stone and Dr. Tetrra of the events that had taken place, but "both doctors adamantly stated they would do nothing and that [Plaintiff] was being manipulative in order not to stay in the hard cell." (Id.) Plaintiff acknowledges that after the doctors left the cell, Captain Martinez arrived in SHU and had Plaintiff removed from the "hard cell." (Id.) Plaintiff contends that he explained the foregoing events to Captain Martinez, but Lt. Mouse refuted "the story told by [Plaintiff] stating that the night before [Plaintiff] allegedly

refused to cell with another inmate." (<u>Id.</u>) Plaintiff explained that "Captain Martinez appeared to be skeptical of [Plaintiff's] explanation, and told [Plaintiff] that in order for him to be taken from the hard cell and placed back into a regular cell he would have to forfeit his walking boot." (<u>Id.</u>) Plaintiff contends that even though he explained that the "rubber soled walking boot" was necessary to prevent him from falling again, Captain Martinez ordered Plaintiff to remove the boot. (<u>Id.</u>, p. 9.) Plaintiff states that he was then taken to medical for examination and released to general population. (<u>Id.</u>) Plaintiff complains that when he returned to general population, "snide comments" were made to him by staff members that "were demeaning and unprofessional." (<u>Id.</u>) Plaintiff claims that the foregoing resulted in physical and physiological pain. (<u>Id.</u>) Accordingly, Plaintiff requests "monetary damages in the form of punitive and compensatory damages." (<u>Id.</u>, p. 10.)

As Exhibits, Plaintiff attaches the following: (1) A copy of the denial letter of Administrative Tort Claim No. TRT-MXR-2015-05255 dated August 26, 2015 (<u>Id.</u>, p. 11.); (2) A copy of a letter dated December 7, 2015, from the United States Department of Justice acknowledging receipt of Administrative Tort Claim No. TRT-MXR-2015-05255 (<u>Id.</u>, p. 12.); (3) A copy of Administrator Ian Connors' Response to Plaintiff's Central Office Administrative Remedy Appeal dated January 19, 2016 (<u>Id.</u>, p. 14.); and (4) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated August 13, 2014 (<u>Id.</u>, p. 15.).

By Order entered on August 9, 2016, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 11.) The Clerk issued process on the same day. (Document No. 12.) On August 17, 2016, the Summons was returned unexecuted for Defendant Martinez. (Document No. 16.) On August 22, 2016, the Summons was returned unexecuted for Defendant Mouse. (Document No. 20.) The Court notes

that the certified mail was addressed to Captain Martinez and Lieutenant Mouse at FCI McDowell, P.O. Box 1029, Welch, WV 24801. (Document Nos. 16 and 17.) The mail, however, was returned as undeliverable as to both individuals with the notation of "Return to Sender, Refused, No Longer at This Address." (Id.) By Orders entered on August 18, 2016, and August 23, 2016, the undersigned directed Plaintiff to provide the Court with an updated address for Defendant Martinez and Defendant Mouse. (Document Nos. 17 and 21.) The undersigned further advised Plaintiff that his failure to provide the Court with an updated address for the above Defendants would result in a recommendation of dismissal of this matter without prejudice as to the above Defendants pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia. (Id.) The record reveals that Plaintiff never provided the Court with an updated address for Defendants Martinez and Mouse.

On December 2, 2016, Defendants Lucas, Rife, and Stock filed their "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 26 and 27.) First, Defendants argue that Plaintiff's Bivens claim should be dismissed because: (1) "Plaintiff failed to exhaust administrative remedies regarding his claims of inappropriate post-operative care and inappropriate cell placement following the orbital fracture" (Document No. 27, pp. 8 – 10.); (2) "Plaintiff cannot establish an Eighth Amendment violation" (Id., pp. 10 – 14.); (3) "Verbal harassment does no rise to the level of a constitutional violation" (Id., p. 15.); (4) "Any claims of retaliation must fail" (Id., pp. 15 – 16.); (5) "Defendants are entitled to qualified immunity" (Id., pp. 16 – 18.); and (6) "Defendants Lucas is a U.S. Public Health Service Employee and is entitled to absolute immunity" (Id., p. 18 – 19.). Next, Defendants argue that Plaintiff's FTCA claim should be dismissed because: (1) "The United States of America is the only proper

Defendant in an FTCA claim" (Id., pp. 19 - 20.); (2) "Plaintiff's FTCA claim against the United States regarding negligent cell placement must be dismissed pursuant to Rule 12(b)(1) as the actions of BOP officials clearly fall within the discretionary function exception to the FTCA, thus depriving the Court of subject matter jurisdiction" (Id., pp. 20 – 26.); and (3) "Plaintiff's negligence claim regarding his post-operative medical care must be dismissed for failure to comply with the West Virginia Medical Professional Liability Act" (Id., pp. 27 – 30.)

As Exhibits, Defendants attach the following: (1) The Declaration of Sharon Wahl (Document No. 26-1, pp. 1 - 3.); (2) A copy of Plaintiff's "Claim for Damage, Injury or Date" (Tort Claim No. TRT-MXR-2015-05255) dated July 7, 2015 (Id., pp. 4 - 15.); (3) A copy of the Tort Claim denial letter dated August 26, 2015 (Id., p. 16.); (4) A copy of the Tort Claim denial of reconsideration letter dated December 7, 2015 (Id., pp. 17 - 19.); (5) A copy of Plaintiff's relevant medical records (Id., pp. 20 – 81.); (6) A copy of Plaintiff's SENTRY Administrative Remedy Generalized Retrieval (Id., pp. 82 – 88.); (7) A copy of SENTRY Administrative Remedy No. 777431 (Id., pp. 89 – 106.); (8) The Declaration of K. Stock (Document No. 26-2, pp. 1 - 2.); (9) A copy of SENTRY Inmate History Quarters (Id., pp. 3 – 4.); (10) The Declaration of M. Rife (Document No. 26-3, pp. 1 -2.); (11) A copy of Plaintiff's "Medical Duty Status" form (Id., p. 3.); and (12) The Declaration of K. Lucas (Document No. 26-4.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on December 5, 2016, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 29.) On January 9, 2017, Plaintiff filed a Motion for Extension of Time to file a Response. (Document No. 30.) By Order entered on January 10, 2017, the undersigned granted Plaintiff's Motion and directed that

any response be filed on or before February 6, 2017. (Document No. 31.) Plaintiff, however, has failed to file a Response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment."

**FACTUAL HISTORY**

On March 10, 2014, Dr. Azzo, an orthopedic surgeon, performed a left lateral ligament reconstruction and a peroneal brevis tendon transfer on Plaintiff's ankle. (Document No. 26-1, pp. 80 – 81.) Plaintiff was returned to the institution the same day and was evaluated by R.N. Nunley during a Medical Trip Return Encounter. (Id., pp. 44 – 47.) R.N. Nunley instructed Plaintiff to notify a correctional officer if there was an increase in swelling or pain. (Id.) R.N. Nunley further informed Plaintiff that Dr. Azzo post-operative orders were for weight bearing as tolerated. (Id.) P.A. Goode prescribed clindamycin and an injection of Toradol for pain. (Id.) The next day, on March 11, 2014, at approximately 8:13 a.m., Plaintiff was evaluated by P.A. Sherri Lilly for a post-operative evaluation. (Id., pp. 41 – 43.) Plaintiff complained of pain and acknowledged that the Clindamycin and Toradol injection helped to control his pain. (Id.) P.A. Lilly ordered an additional Toradol injection and prescribed acetaminophen/codeine (Tylenol 3) for pain. (Id.) Approximately two hours later, Plaintiff was evaluated in the Special Housing Unit ["SHU"] by R.N. Tracey Walters (Id., pp. 38 – 40.)

On March 12, 2014, Plaintiff was evaluated by R.N. Dufour. (Id., pp. 36 - 37.) R.N. Dufour noted that Plaintiff complained of increased swelling in his toes and pain. (Id.) R.N. Dufour instructed Plaintiff to increase his fluid intake due to consistent low grade temperature, to bear weight on his foot at tolerated, and to keep his foot elevated when resting. (Id.) R.N. Dufour noted that Dr. Matos was notified of Plaintiff's temperature and swelling, and an appointment was

scheduled with Dr. Matos. (Id.) On March 13, 2014, Plaintiff was removed from SHU and released to general population. (Document No. 26-2.) For less than 2 hours that day, Plaintiff was placed in a three-man cell on an upper level of the housing unit. (Id.) Defendant Stock then moved Plaintiff to a lower level cell where he was also assigned to a lower bunk. (Id.) On March 14, 2014, Plaintiff was evaluated by Dr. Matos. (Document No. 26-1, pp. 33 – 35.) Dr. Matos examined Plaintiff and prescribed a Toradol injection and Ibuprofen 800 mg for pain. (Id.) On March 17, 2014, Plaintiff was moved into a different lower-level cell with a lower bunk assignment. (Exhibit 2, Attachment A). On March 21, 2014, Plaintiff reported to Health Services complaining of continued pain. (Document No. 26-1, pp. 30 – 32.) Plaintiff was evaluated by R.N. W. Walters, who notified Dr. Matos of Plaintiff's condition. (Id.) Dr. Matos prescribed acetaminophen/codeine (Tylenol 3) for the pain. (Id.)

On March 25, 2014, Plaintiff was evaluated by Dr. Azzo for his post-op follow-up. (Id., pp. 77 - 79.) Upon examination, Dr. Azzo noted that Plaintiff was recovering as anticipated with no swelling, no instability, and dorsiflexion and plantarflexion were improved. (Id.) Dr. Azzo further noted that Plaintiff's wound was clean with no drainage and his sutures were removed. (Id.) A short leg cast was applied, and Plaintiff was instructed on cast care and a follow-up appointment was scheduled for four weeks. (Id.) On the same day, Plaintiff was evaluated by R.N. Dufour during a Medical Trip Return Encounter. (Id., pp. 40 – 41.) Plaintiff's prescription for Tylenol 3 was refilled and Plaintiff was instructed to follow-up at sick call as needed. (Id.) On March 31, 2014, Plaintiff fell in his cell resulting in facial injuries. (Id., pp. 24 – 26.) Plaintiff reported that he slipped because his boot was slick on the bottom." (Id.) PA Lilly examined Plaintiff noting a laceration above the right eye, swelling of right eye, vision changes in the right eye, and bleeding

from the nose. (<u>Id.</u>) PA Lilly noted that Plaintiff was to be transported to the local emergency room for further evaluation and treatment. (<u>Id.</u>) Plaintiff was diagnosed with a right orbital floor fracture and nose fracture. (<u>Id.</u>, pp. 20 – 23, 54 - 66.) On March 31, 2014, Plaintiff was transferred from the Beckley ARH Hospital to the Charleston Area Medical Center where Plaintiff underwent surgery to repair the injuries. (<u>Id.</u>, pp. 68 – 76.)

<h3 style="text-align:center"><u>THE STANDARD</u></h3>

### <u>Motion to Dismiss</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(<u>quoting</u> <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### <u>Summary Judgment</u>

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no

genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1.    **Defendants Martinez and Mouse:**

A prior review of the Docket Sheet in the instant case reflected that service had not been effectuated upon Defendants Martinez and Mouse. By Order entered on August 18, 2016, the undersigned directed as follows concerning Defendant Martinez:

> [I]t is hereby **ORDERED** that Plaintiff shall provide the Court with an updated address for Defendant Martinez by **September 8, 2016**. Failure of Plaintiff to provide the Court with an updated address for the above Defendant by September 8, 2016, will result in a recommendation of dismissal of this matter without prejudice as to the above Defendant pursuant to Rule 41(b) of the Federal Rules of

Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia.

(Document No. 17.) The undersigned entered a similar order concerning Defendant Mouse on August 23, 2016. (Document No. 21.) Specifically, the undersigned directed as follows concerning Defendant Mouse:

> [I]t is hereby **ORDERED** that Plaintiff shall provide the Court with an updated address for Defendant Mouse by **September 13, 2016**. Failure of Plaintiff to provide the Court with an updated address for the above Defendant by September 13, 2016, will result in a recommendation of dismissal of this matter without prejudice as to the above Defendant pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia.

(Id.) Plaintiff has not responded to the Court's above Orders.

Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia, District Courts possess the inherent power to dismiss an action for a *pro se* Plaintiff's failure to prosecute *sua sponte*.[2] See Link v. Wabash Railroad Co., 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). Rule 41.1 of the Local Rules provides:

> **Dismissal of Actions**. When it appears in any pending civil action that the principal issues have been adjudicated or have become moot, or that the parties have shown no interest in further prosecution, the judicial officer may give notice to all counsel and unrepresented parties that the action will be dismissed 30 days after the date of the notice unless good cause for its retention on the docket is shown. In the absence of good cause shown within that period of time, the judicial officer may dismiss the

---

[2] **Error! Main Document Only.**Rule 41(b) of the Federal Rules of Civil Procedure provides:
**(b) Involuntary Dismissal: Effect**. If the plaintiff fails to prosecute or to comply with these rules or any order of court, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule - - except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 - - operates as an adjudication on the merits.

action. The clerk shall transmit a copy of any order of dismissal to all counsel and unrepresented parties. This rule does not modify or affect provisions for dismissal of actions under FR Civ P 41 or any other authority.

Although the propriety of a dismissal "depends on the particular circumstances of the case," in determining whether to dismiss a case involuntarily for want of prosecution, the District Court should consider the following four factors:

(i) the degree of personal responsibility of the plaintiff;
(ii) the amount of prejudice caused the defendant,
(iii) the existence of a history of deliberately proceeding in a dilatory fashion, and
(iv) the existence of a sanction less drastic than dismissal.

Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989). In consideration of the first factor, the Court finds that the delays in this case are attributable solely to Plaintiff as Defendants Martinez and Mouse have not been required to make an appearance in this action. On August 9, 2016, the Clerk issued process for the above Defendants. (Document No. 12.) The Summonses, however, were returned un-executed. (Document Nos. 16 and 20.) By Orders entered on August 18 and 23, 2016, the Court notified Plaintiff of the foregoing and directed Plaintiff to provide the Court with accurate addresses for the above Defendants so that proper service could be effectuated.[3] (Document No. 17 and 21.) Plaintiff, however, has not responded to the foregoing Orders. Plaintiff, therefore, is the sole cause of the delays in this action. With respect to the second factor, the record is void of evidence indicating that the Defendants have been prejudiced by the delays in this case.

---

[3] The Summons for Defendants Martinez and Mouse were issued to the addresses provided by Plaintiff: FCI McDowell, P.O. Box 1029, Welch, WV 24801. (Document No. 12.) The Docket Sheet, however, reflects that the foregoing are incorrect addresses for the above Defendants. (Document Nos. 16 and 29.) The undersigned notes that it is Plaintiff's responsibility to provide the Court with the correct address of a Defendant.

Concerning the third factor, the record indicates that Plaintiff has some history of "deliberately proceeding in a dilatory fashion" as Plaintiff has not responded to a dispositive motion filed by Defendants Stock, Rife, and Lucas.

In consideration of the fourth factor, the Court acknowledges that a dismissal under either Rule 41(b) or Local Rule 41.1 is a severe sanction against Plaintiff that should not be invoked lightly. The particular circumstances of this case, however, do not warrant a lesser sanction. An assessment of fines, costs, or damages against Plaintiff would be unjust in view of Plaintiff's status as a *pro se*, indigent litigant. Moreover, explicit warnings of dismissal would be ineffective in view of Plaintiff's failure to respond to the undersigned's Order entered nearly eight months ago. (Document Nos. 17 and 21.) In consideration of all factors, the undersigned concludes that dismissal for failure to prosecute is warranted. Accordingly, the undersigned recommends that this action be dismissed without prejudice as to Defendants Martinez and Mouse unless Plaintiff is able to show good cause for his failure to prosecute.

**2.     Defendants Stock, Rife, and Lucas:**

**A.     Bivens Claim:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due

Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.[4] The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

>        **(i)**     **Failure to exhaust claim of inappropriate post-operative care and cell placement following the orbital fracture.**

---

[4] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[5] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where

_____

[5] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(<i>overruled on other grounds</i>), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in

Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4ᵗʰ Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7ᵗʰ Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step

grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning his <u>Bivens</u> claims regarding the following: (1) Plaintiff's post-operative medical care after the orbital fracture suffered on March 31, 2014; and (2) Plaintiff's cell placement following the orbital fracture. (Document Nos. 26 and 27.) Defendants, however, acknowledge that Plaintiff fully exhausted his administrative remedies regarding his claim of improper cell placement following his ankle surgery. (Document No. 27, pp. 8 - 10.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 26-1, pp. 1 - 3.) Ms. Wahl declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (<u>Id.</u>, p. 1.) Ms. Wahl explains that she also has access to information regarding inmates in the BOP's custody. (<u>Id.</u>) Specifically, Ms. Wahl states as follows in her Declaration (<u>Id.</u>, pp. 2 - 4.):

21.    Plaintiff exhausted administrative remedies regarding his claim of improper cell placement following the ankle surgery, through the successful filing of Remedy ID No. 777431 at all three levels.

* * *

25.    A further review of SENTRY, however, shows that Plaintiff started no new remedies regarding his post-operative medical care after the orbital fracture he suffered on March 31, 2014 at FCI McDowell.

26.    Additionally, he filed no administrative remedies regarding his cell placement following the orbital fracture.

27.    The only remedies filed after March 31, 2014 are appeals of the remedies he had already begun regarding his initial medical care at FCI McDowell for his ankle,[6] the cell placement following the ankle surgery, one remedy (Remedy ID No. 830728-F1) regarding his sentence computation, and one

_____

[6] The undersigned notes that Plaintiff filed a *Bivens* and FTCA action challenging the medical care provided regarding his ankle injury in Civil Action No. 1:15-07411.

requesting hernia surgery in 2016.

(Id., p. 3.) Accordingly, Defendants argue that Plaintiff's <u>Bivens</u>' claim based upon inadequate post-operative medical care after the orbital fracture and improper cell placement following the orbital fracture are unexhausted and should be dismissed. (Document No. 27, pp. 8 – 10.)

Plaintiff failed to file a Response disputing that he failed to exhaust his administrative remedies concerning allegations that Defendants provided (1) inadequate post-operative medical care after Plaintiff's orbital fracture, and (2) improper cell placement following the orbital fracture. To the extent Plaintiff is asserting a <u>Bivens</u> claim based upon the forgoing, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the PLRA. Plaintiff fails to produce any documents indicating that he exhausted the foregoing <u>Bivens</u> claim. Based on the foregoing, the undersigned recommends that Plaintiff's <u>Bivens</u> claim regarding the foregoing issues be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint.

### (ii) Defendant Lucas is entitled to absolute immunity.

In Defendants' Motion, Defendant Lucas argues that she is a United States Public Health Service Employees and is entitled to absolute immunity. (Document No. 27, pp. 18 – 19.) In support, Defendant Lucas attaches her Declaration stating as follows: "I am a Commissioned Officer in the United States Public Health Service, and have been such at all times relevant to this case." (Document No. 26-4.) Plaintiff failed to file a Response disputing the foregoing.

Title 42 U.S.C. § 233(a) provides as follows:

The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damages for personal injury, including death, resulting from the

performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim.

Thus, Congress made proceedings under the Federal Tort Claims Act the sole avenue to seek relief against a Public Health Service employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. The United States Supreme Court has held that "[t]he immunity provided by § 233(a) precludes *Bivens* actions against individual [Public Health Service] officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment." <u>Hui v. Castaneda</u>, 559 U.S. 799, 130 S.Ct. 1845, 1847, 176 L.Ed.2d 703 (2010)(stating that Section 233(a) "plainly precludes a *Bivens* action against petitioners by limiting recovery for harms arising from the conduct at issue to an FTCA action against the United States.") Defendant Lucas holds the position of the Health Services Administrator ["HSA"] at FCI McDowell. Thus, Plaintiff appears to allege that Defendant Lucas is responsible for failing to ensure that he was provided appropriate medical care. Defendant Lucas was clearly acting within the scope of her employment when performing functions pertinent to her position, such as her administrative oversight and supervision of the Health Services Department. Based on the foregoing, the Court finds that Defendant Lucas was a Commissioned Officer in the United States Public Health Service during the time period relevant to this Complaint and has absolute immunity from suit for all claims arising from the medical care provided to Plaintiff. The Court, therefore, respectfully recommends that Defendant Lucas' "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" be granted. The undersigned finds it unnecessary to consider the other reasons which Defendant Lucas has

submitted for dismissal as to Plaintiff's <u>Bivens</u> claim.

### (iii) No evidence of deliberate indifference by Defendants Stock and Rife.

As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), <u>rev'd on other grounds</u>, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. <u>See</u> <u>Pressly v. Hutto</u>, 816 F.2d 977, 979 (4th Cir. 1987); <u>Moore v. Winebrenner</u>, 927 F.2d 1312, 1316 (4th Cir. 1991) <u>cert. denied</u>, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the

minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") Therefore, Plaintiff must first allege and eventually establish an objectively "sufficiently serious" deprivation. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that there was a substantial risk to Plaintiff's health or safety and that Defendant disregarded the serious physical consequences.

In his Complaint, Plaintiff appears to contend that Defendants Stock and Rife acted with deliberate indifference in violation of the Eighth Amendment by failing to provide Plaintiff with a medical or handicap accessible cell following his ankle surgery. (Document No. 3.) First, the undersigned finds that Plaintiff cannot satisfy the objective standard because Plaintiff has not

alleged a sufficiently serious deprivation. Plaintiff does not allege that a medical/handicap cell assignment was medically necessary or that denial of such a cell was depriving Plaintiff of a basic human need. Plaintiff merely alleges that a medical/handicap cell assignment was necessary because he had difficulty maneuvering around his cell due to his ankle injury. Plaintiff explained that he had difficulty navigating his cell due to the small size of the cell and the fact that he could not bear weight on his ankle. Although the failure to provide a handicap accessible cells can constitute an extreme deprivation in some instances, Plaintiff has failed to establish such a deprivation. See LaFault v. Smith, 834 F.2d 389, 392-94 (4th Cir. 1987)(finding an Eighth Amendment violation where a paralyzed wheelchair-bound inmate was denied adequate toilet facilities). An allegation, however, that a handicap accessible cell is necessary because an inmate's ability to maneuver around his cell is impeded is insufficient to demonstrate a deprivation of a basic human need. See Cyrus v. Stansberry, 2010 WL 3672256, * 5 (E.D.N.C. Sept. 20, 2010)(plaintiff's allegation that a handicap accessible cell was necessary due to the impediment on his ability to maneuver around his cell was insufficient to demonstrate a serious deprivation under the objective prong of the Eighth Amendment); Thomas v. Pennslvania Department of Corrections, 615 F.Supp.2d 411, 422-23 (W.D.Pa. May 12, 2009)(unpublished)(finding plaintiff's allegation of difficultly maneuvering his cell to be an insufficient deprivation to establish an Eighth Amendment claim); Glaster v. New Jersey, 2008 WL 3582797, * 4 (D.N.J. Aug. 11, 2008)(finding that "[a]lthough [plaintiff] did not receive handicap accessibility at all times, he was not deprived of his basic human needs"). Accordingly, Plaintiff's allegation of difficulty navigating his cell is insufficient to establish a sufficiently serious deprivation under the objective standard.

Notwithstanding the foregoing, the undersigned will consider whether Defendants Stock

and Rife acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends that Defendants acted with deliberate indifference in failing to place him in a medical/handicap cell because Plaintiff was at a "fall risk" due to his ankle injury. The record reveals that Plaintiff informed Defendants Stock and Rife that a handicap cell was medically necessary. Defendants Stock and Rife, however, checked with Health Services and were advised that it was *not* medically necessary for Plaintiff to be placed in a handicap cell. (Document Nos. 26-2 and 26-3.) Specifically, Defendant Rife declares as follows:

7.     In March 2014, Plaintiff had ankle surgery and had a cast or brace placed on his foot.

8.     I recall that he was released from the Special Housing Unit and returned to A-Unit.

9.     Plaintiff had a Medical Duty Status Form for a lower bunk issued by Health Services on March 13, 2014.

10.    I recall that Plaintiff asked to be moved to a handicap-accessible cell after a few days and that Counselor Stock came to me about moving him.

11.    Plaintiff indicated to me that medical staff would agree it was necessary for him to be placed in a handicap-accessible cell.

12.    I called the Health Services Department to ask if Plaintiff needed a handicap-accessible cell and was told by Health Services Administrator that he did not require placement in such a cell.

13.    When I explained to Plaintiff that Health Services had stated that a handicap-accessible cell was not necessary, he was unhappy with the response.

14.    Plaintiff then went to the Warden and Associate Warden with the same request.

15.     When I was approached by the Warden and the Associate Warden about his request, I again called Health Services and was told that he only required a lower bunk and a lower tier cell so that he could avoid stairs.

(Document No. 26-3, pp. 1 - 2.) A review of Plaintiff's Medical Duty Status form confirms that that Plaintiff only had a lower bunk pass. (Id., p. 3.) Non-medical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Miltier v. Born, 896 F.2d 848, 854 - 55 (4th Cir. 1990)(*recognized in* Sharpe v. South Carolina Dept. of Corr., 621 Fed.Appx. 732, 733 (4th Cir. 2015) *as overruled in part on other grounds by* Farmer, 511 U.S. at 837, 114 S.Ct. 1970). In the instant case, the record reveals that Defendants Stock and Rife made sufficient efforts to ensure that Plaintiff's cell placement was appropriate considering his ankle injury. Defendants responded to Plaintiff's request for placement in a medical/handicap cell by consulting with Health Services on at least three occasions. The record reveals that Defendants were advised by Health Services on all three occasions that placement in a handicap accessible cell was not medically necessary. Defendants further ensured that Plaintiff was provided a lower bunk on the lower level. Accordingly, there is no indication that Defendants Stock or Rife knew of and disregarded Plaintiff's need for placement in a medical/handicap cell. The undersigned finds it unnecessary to consider the other reasons which the Defendants Stock and Rife have submitted for dismissal regarding Plaintiff's Bivens claim.

### (iv)     Verbal Harassment:

In his Complaint, Plaintiff alleges that when he was released back to general population, unnamed staff members made "snide comments" to Plaintiff that were "demeaning and unprofessional." (Document No. 3, p. 9.) To the extent Plaintiff is alleging verbal harassment, Defendants request that his claim be dismissed. (Document No. 27, p. 15.) The verbal harassment

or abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim under the Eighth Amendment for which relief can be granted.

### (v)     **Retaliation Claim:**

Prison officials may not retaliate against inmates for their exercise of a constitutional right. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995); American Civil Liberties Union of Md, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993)(citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The Fourth Circuit has held that an inmate's claim of retaliation must be treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(*en banc*)(citations omitted). To prevail upon a claim of retaliation, the inmate must specifically demonstrate that but for his protected conduct, he would not have been subject to the alleged retaliatory act. See Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990). Essentially, the inmate must first demonstrate that he engaged in protected conduct and second that his protected conduct motivated the retaliatory act.

In his Complaint, Plaintiff generally claims that prison officials retaliated against him for filing grievances. The Fourth Circuit, however, has recognized that inmates have "no constitutional right to participate in grievance proceedings." Adams, 40 F.3d at 75. Since Plaintiff has no constitutional right to participate in grievance procedures, he has failed to establish a claim of retaliation. See White v. Francis, 2008 WL 2705102 (N.D.W.Va. Jul. 9, 2008)(finding that "[b]ecause there is no constitutional right to file a grievance, retaliation against [plaintiff] for filing one does not meet the requirements of a retaliation claim"), aff'd, 325 Fed. Appx. 214 (4th Cir. 2009), cert. denied, 130 S.Ct. 1287, 2010 WL 250973 (2010); Alqam v. United States, 2008 WL 2945492, n. 8 (N.D.W.Va. Jul. 24, 2008)(finding that plaintiff failed to state a claim by alleging that he was transferred in retaliation for filing administrative grievances); Bane v. Virginia Dept. of Corrections, 2007 WL 1378523 (W.D. Va. May 8, 2007)(stating that because "there is no constitutional right to participate in grievance proceedings, [plaintiff] is barred from claiming that the transfer was made in retaliation to the exercise of a constitutionally protected right"). Accordingly, the undersigned finds that Plaintiff's claim of retaliation should be dismissed.

### B. FTCA Claim:

#### (i) The United States as a Party.

In its Motion, the United States argues that the individual Defendants should be dismissed as to Plaintiff's FTCA claim and the United States substituted as the Defendant. (Document No. 27, pp. 19 – 20.) Plaintiff failed file a Response addressing the foregoing.

The Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq.*, authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of

the United States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. The FTCA provides at 28 U.S.C. § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA. Carlson v. Green, 446 U.S. 14, 21 - 23, 100 S.Ct. 1468, 1472 -74, 64 L.Ed.2d 15 (1980). Accordingly, the undersigned recommends that the individual Defendants should be dismissed as to Plaintiff's FTCA claim and the United States substituted as the Defendant.

### (ii)     Discretionary Function Exception:

Plaintiff asserts a negligence claim under the FTCA against Defendants. Such claims are appropriately raised against the United States under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671-2680. An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA does not create a new cause of action. <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Id.</u> Section 2680, however, exempts from the waiver certain categories of claims. <u>See</u> 28 U.S.C. §§ 2680(a)-(n). Section 2680(a) contains the discretionary function exception. The discretionary function exception excludes from the FTCA's waiver of sovereign immunity:

> [a]ny claim based upon an action or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abuse.

28 U.S.C. § 2680(a). Plaintiff bears the burden of demonstrating that the discretionary function exception does not apply. <u>Welch v. United States</u>, 409 F.3d 646, 650-51 (4th Cir. 2005); <u>LeRose v. United States</u>, 2006 WL 5925722 * 8 (S.D.W.Va. May 17, 2006)(J. Copenhaver). Whether the discretionary function exception bars suit against the United States depends upon two factors. <u>See United States v. Gaubert</u>, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); <u>Berkovitz v. United States</u>, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). First, the conduct at issue must involve "an element of judgment or choice." <u>Berkovitz</u>, 486 U.S. at 536, 108 S.Ct. 1959; <u>also see Williams v. United States</u>, 50 F.3d 299, 309 (4th Cir. 1995). Where there is a mandatory statute, regulation, or policy, there is no discretion, and therefore no exception "because 'the employee has no rightful option but to adhere to the directive.'" <u>Gaubert</u>, 499 U.S. at 322, 111 S.Ct. at 1273(quoting <u>Berkovitz</u>, 486 U.S. at 536, 108 S.Ct. 1954.) Second, if conduct involved an "element of judgment or choice," the Court must determine whether that judgment is of the kind

that the discretionary function exception was designed to shield." <u>Gaubert</u>, 499 U.S. at 322 - 23.

"Because the purpose of the exception is to prevent judicial second-guessing of the legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on consideration of public policy." <u>Id.</u> at 323. The focus is on the "nature of the conduct" and not the "status of the actor." <u>See</u> <u>Gaubert</u>, 499 U.S. at 325. Thus, the Court should "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." <u>Suter v. United States</u>, 441 F.3d 306, 310 - 11 (4th Cir. 2006). "When a statute, regulation, or agency guideline permits a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." <u>Id.</u>

First, the Court must consider whether the challenged conduct was discretionary or involved an element of judgment or choice. In the instant case, Plaintiff contends that prison officials acted negligently by failing to assign him to a handicap accessible cell. Specifically, Plaintiff asserts that he would not have fell and suffered injuries if he had been assigned to a handicap accessible cell where more floor space existed. Plaintiff, however, fails to identify any mandatory directive concerning inmate classification or inmate placement. Title 18 U.S.C. § 4042 provides that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). Although the foregoing statute imposes upon the BOP a general duty to care for inmates, the statute does not set forth any specific means of carrying out that duty. Thus, the BOP retains discretion as to how it will fulfill that duty. <u>See</u> <u>Cohen v. United States</u>, 151 F.3d

1338, 1342 (11th Cir. 1998)(Section 4042 gives discretion to the BOP as to the means to comply with the statute.); Goforth v. United States, 2013 WL 5658347, * 3 (S.D.W.Va. Oct. 15, 2013)(J. Faber)("Cases from this circuit and other circuits have unanimously held that BOP officials retain wide discretion as to the means by which this general duty is fulfilled.") Decisions concerning inmate classification and inmate placement involve an element of judgment or choice. See Santana-Rosa v. United States, 335 F.3d 39, 44 (1st Cir. 2003)(explaining that "decisions with regard to classification of prisoners, assignment to particular institutions or units, and allocation of guards and other correctional staff must be viewed as falling within the discretionary function exception to the FTCA, if penal institutions are to have flexibility to operate"); Alfrey v. United States, 276 F.3d 557, 564 (9th Cir. 2002)(discretionary function exception applied where BOP officials decided not to relocate an inmate that received death threats from his cellmate and the inmate was subsequently killed); Cohen, 151 F.3d at 1344(prison's decision to place the inmate attacker at a minimum security prison was a discretionary function); Miller v. SFF Hazelton, 2015 WL 1021456, * 2 (N.D.W.Va. March 9, 2015)(finding that "a prison official's decision about where to house inmates involves an element of judgment or choice [and] [t]hat is true regardless of whether the official knows or has reason to know that a particular inmate poses a threat to another inmate"); Little v. United States, 2014 WL 4102377, * 6 (N.D.W.Va. Aug. 18, 2014)(finding that the discretionary function exemption applies to decisions as to inmate classification and placement in general population); Goforth, 2013 WL 5658347 at * 3 ("BOP housing assignments are discretionary and are not subject to a mandatory directive"); Keith v. Hilton, 2010 WL 5136214 (D.S.C. Nov. 12, 2010)("[T]he placement and assignment of inmates into particular institutions, units, or cells by state or federal corrections departments are

discretionary functions, and those decisions are not subject to review unless state or federal law places limitations on official discretion."); <u>Harper v. United States</u>, 2009 WL 3190377 (E.D.Ky. Sept. 30, 2009)(discretionary function exception applied where paraplegic inmate was burned because his bed was nex to a radiator); and <u>Brown v. United States</u>, 569 F.Supp.2d 596, 600 (W.D.Va. 2008)(discretionary function exception applied to "a prison official's decision regarding whether to place an inmate in the general population"). Thus, prison officials' decision to continue to house Plaintiff in a regular cell clearly falls within the discretionary function exception. Based on the foregoing, the undersigned finds that the first prong of the discretionary function test is satisfied because prison staff are allowed discretion regarding the classification and placement of inmates.

Next, the undersigned will consider whether the judgment is of the kind that the discretionary function exception was designed to shield. As stated above, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. <u>Gaubert</u>, 499 U.S. at 324. The BOP "must balance a variety of factors and employ considerable discretion in determining how to go about protecting prisoners from harm, while also managing costs and ensuring the safety of the prison staff and the community." <u>Caudle v. United States</u>, 72 F.3d 132 (7th Cir. 1995). Thus, decisions concerning the placement of inmates are grounded in public policy. <u>See</u> <u>Cohen</u>, 151 F.3d at 1344(finding that the BOP's "actions in classifying prisoners and placing them in institutions involve conduct and decisions that meet both prerequisites for application of the discretionary function exception"); <u>Usry v. United States</u>, 2013 WL 1196650, * 7 (N.D.W.Va. March 25, 2013), <u>aff'd</u>, 545 Fed.Appx.

265 (4th Cir. 2013)(finding that decisions regarding the placement of inmates "are unquestionably grounded in social, economic, safety and security concerns"); <u>Jacocks v. Hedrick</u>, 2006 WL 2850639, * 10 (W.D.Va. Sep. 29, 2006)("The supervisory defendants' decisions regarding . . . staffing of the housing unit also fall within the discretionary function exception); <u>Michell v. United States</u>, 149 F.Supp.2d 1111, 1114 (D.Ariz. 1999), <u>aff'd</u>, 20 Fed.Appx. 636 (9th Cir. 2001)("Decisions by governmental officials as to the day-to-day security needs of a prison, including the number of guards to employ to supervise a given area, where to place emergency alarms, and tactical choices made surrounding the movement of inmates within the institutions are judgment calls and choices based on policy determinations that seek to accommodate 'safety [goals] and the reality of finite agency resources.'") Based on the foregoing, the undersigned finds that the discretionary function exception applies because both prongs of the discretionary function test are satisfied. Accordingly, Plaintiff's above claim should be dismissed for lack of subject matter jurisdiction.

### (iii)     Failure to satisfy the requirements of the MPLA.

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." <u>Muniz</u>, 374 U.S. at 150, 83 S.Ct. at 1850. The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

As stated above, the FTCA does not create a new cause of action. <u>Medina</u>, 259 F.3d at 223. The statute merely "permits the United States to be held liable in tort in the same respect as a private

person would be liable under the law of the place where the act occurred." <u>Id.</u>

In the present case, Plaintiff alleges that Defendants' negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[7] Compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in federal court. <u>Stanley v. United States</u>, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004);

---

[7]   West Virginia Code § 55-7B-6 provides the following in pertinent part:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

<u>also</u> <u>see</u> <u>Starns v. United States</u>, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

Plaintiff alleges that prison employees acted with negligence in diagnosing and providing post-operative care following his surgery for the orbital fracture. In its Motion, the United States contends that Plaintiff's claim should be dismissed because he failed to timely and properly file a notice of claim and a screening certificate of merit pursuant to the MPLA. (Document No. 27, pp. 27 - 30.) Plaintiff failed to file a Response disputing the foregoing.

Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, <u>Roberts v. Gale</u>, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." <u>Farley v. Shook</u>, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." <u>Id.</u> at 858.

Unlike the facts in <u>Johnson</u>, Plaintiff's allegations of negligence are complex and expert testimony is necessary. <u>See</u> <u>Giambalvo v. United States</u>, 2012 WL 984277 * 4 (N.D.W.Va. March 22, 2012)(finding that *Johnson* "is a rare exception to 'the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.'"). In the instant case, Plaintiff contends that medical staff failed to provide appropriate post-operative care for his orbital fracture. The undersigned finds that what constitutes appropriate post-operative treatment for an orbital fracture is not within the understanding of lay jurors by resort to common knowledge and experience. Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). The undersigned, therefore, recommends that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants

Stock, Rife, and Lucas' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 26), **DISMISS** Plaintiff's Complaint (Document No. 3) with prejudice as to Defendants Stock, Rife, and Lucas, **DISMISS** Plaintiff's Complaint (Document No. 3) without prejudice as to Defendants Martinez and Mouse, and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: April 10, 2017.

Omar J. Aboulhosn
United States Magistrate Judge